IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ESTEBAN HERRERRA,

        Plaintiff,

v.                                No. CIV 06-0969 RB/ACT

PETE GEREN, SECRETARY
OF THE ARMY,

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant's Motion for Summary Judgment (Doc. 39), filed on January 11, 2008.  Jurisdiction arises under 28 U.S.C. § 1331.  Having considered the submissions of counsel, relevant law, and being otherwise fully advised, I find that Defendant's motion should be granted in part and denied in part.

**I.**      **Background.**

Plaintiff is employed as an Information Technology ("IT") Specialist at the GS-11 level in the Information Management Office ("IMO") of the United States Army Corps of Engineers' ("USACE's") in Albuquerque, New Mexico.  (Pl. Dep. at 21; 29.)

Plaintiff seeks recovery for employment discrimination based on race and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000, *et seq.*  Plaintiff's claims are based on the following: (1) his GS-11 position description "(PD)" is incorrect; (2) he is entitled to a job classification of GS-12 or GS-13, not GS-11; (3) he was denied an accretion of duty promotion; (4) he was denied a desk audit in 2005; (5) he was denied team leader positions; (6) he was denied training; (7) he was denied performance evaluation and counseling; (8) he was denied administrative access to the computer network; and (9) one of his computer files was moved while

he was on sick leave.

In its motion for summary judgment, Defendant argues: (1) Plaintiff has not established a prima facie case of discrimination; (2) Plaintiff has not established a prima facie case of retaliation; (3) Defendant had legitimate non-discriminatory reasons for its actions; and (4) Plaintiff has not established pretext.

Plaintiff responds that he has (1) established a prima facie case of discrimination; (2) established a prima facie case of retaliation; and (3) presented evidence of pretext.

**II.    Facts.**

The following statement of facts is set forth in the light most favorable to Plaintiff, with all reasonable inferences from the record drawn in his favor.  *See Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006).

In June 1986, at the age of 23, Plaintiff commenced his career with USACE as a "summer hire."  (Pl. Ex. A, Pl. Dep. 19-20.)  Plaintiff continued as a "student employee" while he underwent vocational training at TVI.[1]  (*Id*.)  Although Plaintiff holds neither a bachelor's degree, nor an associate's degree, he earned a certificate in business administration and a diploma in accounting at TVI.  (Pl. Dep. 20-21.)  Plaintiff obtained a permanent position with USACE at the GS-1 level and progressed to a Computer Specialist at grade levels GS-5, GS-7, GS-9, and GS-11.  (Pl. Dep. at 21; 29.)

Plaintiff has always received above average annual performance ratings of either a #1 Exceptional, or a #2 Highly Successful, out of five tiers. (Undisputed Material Fact ("UMF") ¶ 14; Def. Ex. C, Affidavit of Rose Chavez, ¶¶ 2, 6.)  Prior to 2002, Plaintiff was rated at #1 Exceptional

---

[1] TVI is now known as Central New Mexico Community College.  *See* http://www.cnm.edu/depts/mco/media/History.php.

each year. (Chavez Aff. ¶ 6.)  In 2002-2006, Plaintiff received #2 Highly Successful ratings.  (Pl. Exs. B1, B2, B3; Chavez Aff. ¶ 6.)

In 1999, the IMO purchased Computer Associates Unicenter Enterprise Management Software ("EMS").  (Pl. Aff. ¶ 12.)  In association with the procurement of EMS, a GS-12 position was created.  (Pl. Ex. B; Pl. Aff. ¶ 13.)  Plaintiff did not apply for the position because he was not qualified.  (*Id.*)  In June 2000, Brad Olsen, an Anglo male, was selected for the GS-12 Network Administrator position.  (*Id.*; Pl. Dep. 66-67.)  Mr. Olsen failed to implement the EMS and reverted to his previously held position of GS-11 Network Administrator.  (Pl. Aff. ¶ 13; Pl. Dep. 66.)  However, Mr. Olsen continued to receive compensation at the GS-12 level.  (*Id.*)

On February 10, 2000, Glenn Watts, former Chief of IMO, appointed Plaintiff as the project manager for the EMS.  (Pl. Aff. ¶ 13; Pl. Dep. 63; 65.)  Although Plaintiff performed the work that Mr. Olsen failed to perform, Plaintiff was not promoted to a GS-12 position.  (*Id.*)  When Plaintiff asked Mr. Watts to update Plaintiff's PD to reflect his additional duties, Mr. Watts refused.  (Pl. Dep. 63, 66.)

In 2000, Plaintiff was identified as a witness in an EEO complaint filed by a colleague, Patricia Hill.  (Pl. Aff. ¶ 7.)

In May 2001, the Office of Personnel Management ("OPM") issued new standards for all positions at IMO.  (Pl. Dep. at 21.)  Although USACE changed Plaintiff's title from Computer Specialist to IT Specialist, it did not update the PD for IT Specialist.  (Pl. Dep. 21.)  As a result, the PD for Plaintiff's IT Specialist position continued to be the same PD which had been issued for the position of Computer Specialist in 1984.  (*Id.*)  Regardless of the title, the target level for Computer/IT Specialist position has been GS-11 at all relevant times.  (Pl. Dep. 29.)

After reviewing the OPM May 2001 standards, PDs for GS-11 and GS-12 positions at

USACE, as well as PDs available on FASCLASS, an Army database of position descriptions, Plaintiff determined that he should be classified as a GS-12.  (Pl. Dep. 102-103.)  Plaintiff also based his conclusion on the fact that, when he went to conferences, project managers using the same computer applications that Plaintiff managed were classified at the GS-12 or GS-13 levels, as opposed to the GS-11 level.  (Pl. Dep. 103.)

In February 2003, Plaintiff testified in a deposition in Ms. Hill's civil lawsuit ("Hill case"). (Pl. Ex. B, Pl. Aff. ¶ 6.)

From January 2000 until October 2003, Plaintiff attended extensive training and gained experience on the EMS.  (Pl. Aff. ¶ 14.)  However, after Plaintiff testified for Ms. Hill, Plaintiff was denied additional training he needed to continue to implement and maintain the EMS.  (*Id*.)

After Plaintiff's deposition testimony in February 2003, Plaintiff's immediate supervisor, Don Watson, refused to update Plaintiff's PD and demanded that Plaintiff not bring up the issue again.  (Pl. Aff. ¶ 14.)  In October 2003, Mr. Watson sent an email to Plaintiff stating that he was unable to update Plaintiff's PD and would leave the task to Plaintiff's incoming supervisor, Dahte Homan.  (*Id*.)

After Plaintiff's deposition testimony, Mr. Watson curtailed Plaintiff's access to the computer network.  (Pl. Aff. ¶ 14.)  According to Defendant, all employees had their access limited or downgraded as management determined necessary.  (Homan Aff. ¶ 36; Chavez Aff. ¶ 17.)  Only the Network Administrator, Mr. Olsen, and his backup, Ms. Romero, retained network administrative access.  (Homan Aff. ¶ 36; Chavez Aff. ¶ 18.)  If Plaintiff required administrative access for a specific task, he could request such access from the Network Administrator.  (Homan Aff. ¶ 37.)

In 2003, Mr. Watson announced a GS-12 team leader position[2] in the Customer Support Branch. (Pl. Dep. 190-191.) John Peterson, ethnicity unknown, was promoted from a GS-11 to a GS-12 because he became a team leader. (Pl. Dep. 189.) Brad Olsen, an Anglo male, and Valerie Kane, an African-American female, were also team leaders at the GS-12 level. (Pl. Dep. 191, 195; Homan Aff. ¶13.)

In February 2004, David Torske, an Anglo male, was given a team leader position. (Pl. Dep. 192; Pl. Aff. ¶ 26.) From February 2004 through January 2006, Ms. Homan and Rose Chavez, Plaintiff's direct supervisor, blocked Plaintiff from team leader roles. (Pl. Aff. ¶ 30.) Four non-Hispanic persons were appointed to team leadership roles during this period. (*Id.*) Plaintiff served as a team leader from January 2006 to January 2007, but he received no additional pay as a result of this assignment. (Pl. Dep. 193; 213.)

From October 2003 through July 2004, Betty Fontaine, USACE EEO officer, blocked Plaintiff from filing an EEO complaint. (Pl. Aff. ¶ 10.) On February 3, 2004, Ms. Fontaine told Plaintiff to "build a bridge and get over it." (*Id.*) In July 2004, upon the arrival of a new commander, Lieutenant Colonel Todd Wang, Ms. Fontaine granted Plaintiff access to the EEO process. (*Id.*) Four days later, Ms. Fontaine informed Plaintiff that he could not file an EEO complaint, and if he did, she and Major David Bailey would deny the claims. (*Id.*) Plaintiff filed an EEO complaint through the USACE office in Washington, D.C. in July 2004. (Pl. Aff. ¶ 11.)

On January 4, 2004, Plaintiff filed a formal grievance concerning his duties, performance evaluations, and lack of an accurate PD. (Pl. Aff. ¶ 16.) On February 4, 2004, Lieutenant Colonel

---

[2] A team leader oversees a group of employees, but is not technically a supervisor. (Pl. Dep. 195.) IMO management appoints temporary team leaders for periods of about four months when required by the Commander of the District Office. (Undisputed Material Fact ("UMF") ¶28.) If team leaders are not required by the Commander, IMO management chooses not to have team leaders in the IMO. (UMF 29.) Plaintiff was a team leader in 1999. (UMF ¶ 31.)

Dana Hurst determined, *inter alia*, the Plaintiff's PD needed revision and directed Ms. Homan to take an independent look at Plaintiff's PD not later than April 30, 2004.  (Pl. Ex. B4.)

Ms. Homan obtained an extension of the deadline imposed by LTC Hurst.  (Def. Ex. B, Homan Aff. ¶ 3.)  In June 2004, a promotional freeze, known as the "A-76 study," went into effect.  (Pl. Dep 151-152; Homan Aff. ¶ 11.)  In early July 2004, Ms. Homan provided Plaintiff with "pen and ink" revisions to his GS-11 PD.  (Homan Aff. ¶ 5.)  However, Ms. Homan was unable to increase Plaintiff's grade level due to the A-76 study.  (Pl. Aff. ¶ 21; Homan Aff. 11.)

According to Ms. Homan, Plaintiff's duties did not warrant a promotion by accretion of duties to GS-12.  (Homan. Aff. ¶ 15.)  Plaintiff's work on the EMS system qualified him to be rated as a System Administrator at GS-11, not a Project Manager at GS-12.  (*Id.*)  In Mr. Homan's opinion, as a whole, the IMO in Albuquerque Office is under graded as compared to other IMOs. (Homan. Aff. ¶ 19; Def. Ex. C, Chavez Aff. ¶ 3.)  Additionally, the PDs for other IT positions are outdated.  (Homan Aff. ¶ 4.)  Ms. Homan was unaware of Plaintiff's EEO activity or his deposition testimony in the Hill case at the time Ms. Homan revised Plaintiff's PD.  (Homan Aff. ¶ 5.)  Plaintiff was dissatisfied with the revised PD. ( UMF ¶ 11.)

In July 2004, Plaintiff requested $4,000 in training with Computer Associates on EMS.  (Pl. Dep. 200.)  The request was denied.  (*Id.*)  In July or August 2004, Plaintiff requested to go to Army training at Ft. Huachuca, Arizona.  (Pl. Dep. 228, 233.)  The request was denied.  (*Id.*)  USACE denied Plaintiff's request to take free online training for three hours per week for three months starting in March 2007.  (Pl. Dep. 235.)  After Plaintiff complained to the commander, Plaintiff was allowed to take the free online training.  (Pl. Dep. 236)  In 2006, Mr. Olsen and Ms. Romero were permitted to travel to California for training.  (Pl. Dep. 229.)  Additionally, Mr. Olsen and Paul Rebarchik traveled to Fort Huachuca for training.  (Pl. Dep. 233.)

6

From November 2003 to December 2005, Ms. Homan and Ms. Chavez refused to discuss the Total Army Performance Evaluation System ("TAPES") with Plaintiff. (Pl. Aff. ¶ 31.) Ms. Chavez told Plaintiff it was difficult to create performance objectives for Plaintiff because his PD was obsolete. (*Id.*) Ms. Homan and Ms. Chavez removed Plaintiff's career objectives, developmental assignments and on-the-job training in networking and enterprise management from Plaintiff's Individual Development Plan. (Pl. Dep. 35.)

After each fiscal year ended in October, Ms. Chavez met with her employees for annual performance ratings and to discuss performance goals for the upcoming year. (UMF ¶ 40.) For the initial counseling for Fiscal Year 2004, Ms. Chavez met with all of her employees in November 2003, and Plaintiff initialed having received his initial counseling on November 26, 2003. (UMF ¶ 41.) At one point, Ms. Chavez threw Plaintiff's counseling form on his desk and said "take this to your attorney." (Pl. Dep. 201.) Plaintiff refused to sign his performance ratings because he did not agree with his PD. (Pl. Dep. 201-203.)

On November 9, 2004, both Ms. Homan and Ms. Chavez indicated on Plaintiff's 2004 performance evaluation that Plaintiff's PD was inaccurate. (Pl. Aff. 22.) In November 2005, Homan and acting supervisor Cindy Romero indicated on Plaintiff's 2005 performance evaluation that Plaintiff's PD was accurate. (Pl. Aff. ¶ 24.) However, after Plaintiff filed his second EEO complaint in February 2006, both Ms. Homan and Ms. Chavez indicated that Plaintiff's PD was inaccurate. (*Id.*)

Due to the discrimination and retaliation, Plaintiff was on sick leave for much of the period spanning April 2005 through August 2005. (Pl. Aff. ¶ 27.)

In May 2005, Ms. Homan hired Steve Myers, an Anglo male contractor, to perform Plaintiff's duties. (Pl. Aff. ¶ 27.) When Plaintiff reported to work in June 2005, he discovered his

personal working file had been removed from his computer by Cindy Romero.  (*Id.*; Def. Ex. D, Affidavit of Cindy Romero ¶¶ 7-8.)  Ms. Romero had moved the file to a shared network drive where everyone in the office could access it.  (Romero Aff. ¶ 8.)

Plaintiff went back on sick leave until the end of July 2005.  (Pl. Aff. ¶ 28.)  During July 2005, Mr. Olsen removed the main module of EMS.  (Pl. Aff. ¶ 27.)

On August 3, 2005, Plaintiff met with LTC Wang and an EEO representative.  (Pl. Aff. ¶ 37.) During the meeting, LTC Wang offered, and Plaintiff accepted, a team leader position.  (*Id.*)

Upon his return to work in August 2005, Ms. Homan refused to assign the team leader position to Plaintiff.  (Pl. Aff. ¶ 38.)  Instead, Ms. Homan appointed three Anglo males, Mr. Olsen, Mr. Myers, and John Lawrence, to be team leaders for July to November 2005.  (Homan Aff. ¶ 32.) Ms. Homan curtailed Plaintiff's access to the system, refused to return his duties, and refused to allow him to reinstall EMS.  (Pl. Aff. ¶ 28.)  Ms. Homan continued Mr. Myers' assignment as Information Assurance Security Officer ("IASO"), a post previously held by Plaintiff.  (Pl. Aff. ¶ 29; Pl. Dep. 208-209.)

Plaintiff requested a desk audit, which could have resulted in the non-competitive promotion of Plaintiff from GS-11 to GS-12 via an accretion of duties.  (UMF ¶ 19.)  In September 2005, Ms. Homan contacted the Army Civilian Personnel Office ("CPAC/CPOC") in Sacramento, California for a desk audit in order to obtain input from an outside source.  (UMF ¶ 20; Homan Aff. ¶ 25.) CPAC/CPOC informed Ms. Homan that they no longer did desk audits in person and they could only offer a position review via telephone and/or emailed comments from the subject employee and from others.  (Homan Aff. ¶ 25.)  Ms. Homan pursued this option.  (*Id.*)  CPAC/CPOC emailed questionnaires to Plaintiff, Ms. Homan, Ms. Romero, and Mr. Olsen.  (*Id.*)  Upon receipt of the questionnaire responses, the Army Personnel office refused to pursue the issue further because there

was a lack of agreement on Plaintiff's duties.  (UMF ¶ 23.)

In October 2005, Ms. Homan used Plaintiff's PD in order to prevent Plaintiff from obtaining a desk audit.  (Pl. Aff. ¶ 23.)  Ms. Homan "tore apart" an accretion of duties for non-competitive promotion worksheet that Plaintiff provided.  (*Id.*)  The desk audit did not occur because the PD that was used for the desk audit was not agreed upon.  (Pl. Dep. 173.)  Plaintiff testified in his deposition that a desk audit would have resulted in his position being reclassified as a GS-12  (Pl. Dep. 68; 80.)

In November 2005, Robert Liddy, EEO officer, refused to file an EEO complaint proffered by Plaintiff.  (Pl. Aff. ¶ 11.)  In February 2006, after Plaintiff threatened to contact his congressional representatives, Plaintiff was allowed to file his second EEO complaint.  (*Id.*)

In September 2007, when Mr. Olsen moved to a new position in ACE-IT, Plaintiff became backup Network Administrator and his administrative access was restored.  (Homan Aff. ¶ 38; Chavez Aff. ¶ 19.)

The A-76 study resulted in a new "ACE-IT" organization that officially takes effect in May 2008.  (Homan Aff. ¶ 11.)  If current employees are not offered new positions in ACE-IT, they will no longer be employees of USACE.  (*Id.*)  As of February 6, 2008, Plaintiff had received a reduction-in-force notice with a target separation date of June 8, 2008.  (Pl. Aff. ¶ 7.)

## III.   Standard.

Summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate "only where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1207 (10th Cir. 2006) (quoting

Rule 56(c).  The evidence, and all reasonable inferences drawn therefrom, must be viewed in the light most favorable to the nonmoving party.  *See* Rule 56(c).

The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact and entitlement to judgment as a matter of law.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  If this burden is met, the nonmovant cannot rest on the pleadings, but must set forth specific facts by reference to affidavits, deposition transcripts, or other exhibits to support the claim.  *Serna v. Colo. Dept. of Corr.*, 455 F.3d 1146, 1151 (10th Cir. 2006) (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (noting that, on summary judgment, the plaintiff can "no longer rest on the pleadings[.]")).

The nonmovant's burden is more than a simple showing of "some metaphysical doubt as to the material facts."  *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Evidence relied upon in opposition to summary judgment "may be insufficient to create a triable fact if it is nonspecific or otherwise non-responsive, vague, conclusory, or self-serving."  *Piercy v. Maketa*, 480 F.3d 1192, 1197-98 (10th Cir. 2007).  The nonmovant's "evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise."  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

## IV.    Discussion.

Title VII prohibits employment discrimination on the basis of race and retaliation against an employee who opposes any unlawful employment practices or files a charge with the EEOC.  *See* 42 U.S.C. §2000e-2(a)(1) and § 2000e-3(a).  A plaintiff alleging such claims may prove intentional discrimination or retaliation through either direct evidence or indirect evidence of discrimination or retaliation.  *Kendrick v. Penske Transp. Services, Inc.*, 220 F.3d 1220, 1225 (10th Cir. 2000) (addressing a discrimination claim); *Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1225 (10th

Cir. 2008) (addressing a retaliation claim). Where, as here, the plaintiff relies on indirect evidence of discriminatory intent,[3] the court applies the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-804 (1973).

Pursuant to the *McDonnell Douglas* framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination or retaliation by a preponderance of the evidence. *McDonnell Douglas*, 411 U.S. at 802-804. If the plaintiff establishes a prima facie case, a presumption of discrimination or retaliation arises and the employer has the burden to produce a "legitimate, nondiscriminatory reason" for its actions. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Once the employer identifies a legitimate reason for its actions, the burden shifts back to the employee to prove that the proffered legitimate reasons were a pretext for discrimination. *See Reeves*, 530 U.S. at 148.

In order to establish a prima facie case of discrimination, a plaintiff must produce evidence demonstrating: (1) he belongs to a protected class; (2) he suffered an adverse employment action; and (3) the adverse employment action occurred under circumstances that give rise to an inference of discrimination. *Hysten v. Burlington N. & Santa Fe Ry., Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002). In order to establish a prima facie claim of retaliation, a plaintiff produces evidence demonstrating: (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action during or after his protected opposition that a reasonable employee would have

---

[3] Plaintiff contends that Ms. Chavez's statement of "take this to your attorney" when she threw Plaintiff's evaluation on his desk constitutes direct evidence of retaliation. While unprofessional, this statement does not constitute direct evidence of retaliation because it does not imply that retaliatory animus played a role in a challenged decision. *See Fye*, 516 F.3d at 1226; *see also Weigel v. Baptist Hosp. of East Tenn..*, 302 F.3d 367, 383 (6th Cir. 2002) ("When determining whether proffered evidence constitutes direct evidence of discrimination, we consider whether the evidence, if believed, compels the conclusion that retaliatory animus played a part in the challenged decision.") Plaintiff has presented neither direct evidence of discrimination nor a mixed-motive theory. *See Fye*, 516 F.3d at 1226 ("[a] mixed-motive case is not established . . . until the plaintiff presents evidence that directly shows that retaliation played a motivating part in the employment decision at issue.)

found materially adverse; and (3) a causal connection exists between the protected activity and the materially adverse action. *McGowan v. City of Eufala*, 472 F.3d 736, 741 (10th Cir. 2006); *see also Burlington N. & Santa Fe Ry., Co. v. White*, 548 U.S. 53 (2006) (finding that Title VII's anti-retaliation provision prohibits all materially adverse actions, not merely those harms that are specifically employment-related). A plaintiff's burden of establishing a prima facie case is not onerous. *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir. 2005). Indeed, the Tenth Circuit has described the burden of articulating a prima facie case as "slight." *Orr v. City of Albuquerque*, 417 F.3d 1144,1149 (10th Cir. 2005).

Defendant argues that Plaintiff has presented no evidence giving rise to an inference of discrimination. In order to establish the adverse employment action occurred under circumstances that give rise to an inference of discrimination, a plaintiff need not show disparate treatment as compared to co-workers outside the protected class. *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005). Ordinarily, the third part of the prima facie test will be satisfied by proof that the employer treated similarly situated employees more favorably. *Hysten*, 296 F.3d at 1181. The Tenth Circuit stressed in that case, however, that "courts must be sensitive to the myriad of ways such an inference can be created," and that while evidence of more favorable treatment of similarly situated employees can give rise to an inference of discrimination to satisfy the third part of the prima facie burden, it is not, in fact, an element of a prima facie case. *Id.* 296 F.3d at 1182; *see also Kendrick*, 220 F.3d at 1229.

In this case, Plaintiff has submitted evidence that similarly situated Anglo employees were treated differently. Mr. Olsen was promoted to GS-12 in connection with his EMS. Plaintiff was not promoted to GS-12 based on the same assignment. Mr. Olsen, Mr. Myers, and Mr. Lawrence were appointed to team leader positions. Plaintiff was denied such positions for a significant period

12

of time.  Mr. Olsen was sent to out-of-town training.  Plaintiff's requests for out-of-town training were denied.  Mr. Watson refused to revise Plaintiff's PD and curtailed Plaintiff's access to the network. Ms. Homan delayed in revising Plaintiff's PD until after the A-76 freeze went into effect and undermined Plaintiff's attempt to obtain a desk audit. Taken together, construed in the light most favorable to Plaintiff, these facts create an inference that Defendant discriminated against Plaintiff based on his race.

At the prima facie stage, a plaintiff is only required to raise an inference of discrimination, not dispel the non-discriminatory reasons subsequently proffered by the defendant.  *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000).  The burden "is one of production, not persuasion; it can involve no credibility assessment." *Reeves*, 530 U.S. at 142. Plaintiff has submitted evidence sufficient to create an inference of discrimination.  *See Plotke v. White*, 405 F.3d at 1100.

Defendant argues that Plaintiff has not produced evidence of an adverse employment action with respect to the discrimination claim.[4]  In the context of a Title VII discrimination claim, an adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Piercy v. Maketa*, 480 F.3d at 1203 (quotation omitted).

The Tenth Circuit liberally construes the term "adverse employment action" and takes a case-by-case approach, examining the "unique factors relevant to the situation at hand." *Hillig v.*

---

[4] The Supreme Court addressed the contours of adverse employment actions in *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53 (2006).  In that case, the Court applied a more lenient standard in analyzing the anti-retaliation provisions of Title VII.  *See Piercy v. Maketa*, 480 F.3d 1192, 1203 n. 12 (10th Cir. 2007). The Court, however, emphasized the substantive discrimination provisions of Title VII are limited "to [adverse] actions that affect employment or alter the conditions of the workplace." *Id.* 480 F.3d at 1203. Thus, while *Burlington Northern* modified the retaliation standards for adverse actions, it had no similar effect on the Tenth Circuit's discrimination jurisprudence. *Id.*

13

*Rumsfeld*, 381 F.3d 1028, 1033 (10th Cir. 2004).   Nevertheless, "a mere inconvenience or an alteration of job responsibilities" does not rise to the level of an adverse employment action. *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 533 (10th Cir. 1998).

Plaintiff was seeking a promotion to GS-12 as a result of accretion of duties.  A denial of a promotion qualifies as an adverse employment action.  *See MacKenzie v. City and County of Denver,* 414 F.3d 1266, 1279 (10th Cir. 2005).  Plaintiff has submitted evidence that he was performing project management duties which equated to a GS-12 level position.  In order to obtain this promotion, Plaintiff needed an updated PD to accurately reflect his duties.  Indeed, LTC Hurst directed Ms. Homan to review Plaintiff's PD by April 30, 2004.  However, Ms. Homan delayed the revision until after the A-76 freeze on promotions officially went into effect.

The desk audit and team leader appointments were intertwined with Plaintiff's attempt to obtain a promotion by accretion of duties.  Plaintiff testified in his deposition that the desk audit would have lead to reclassification of his position to a GS-12, and that a team leader position may have been related to the GS-12 level.  Plaintiff has presented evidence that the reason why the CPAC/CPOC did not conduct a desk audit was because Ms. Homan did not accurately define his duties.  After LTC Wang offered a team leader position to Plaintiff, Ms. Homan refused to appoint Plaintiff and instead appointed three Anglos.

Plaintiff has submitted evidence that he was denied a promotion by accretion of duties because Defendant failed to update his PD.  Plaintiff has also submitted evidence that he may have received additional pay and an increased eligibility for promotion based on the team leader position. Drawing all reasonable factual inferences in favor of Plaintiff, there is a genuine dispute of material fact as to whether Plaintiff suffered adverse action based upon the denial of an accurate PD, desk audit, and team leader position.

14

However, Plaintiff has submitted no evidence that the denial of training, performance counseling, administrative access to the network, or the moving of the computer file significantly changed his employment status or caused a significant change in benefits.  Defendant is entitled to summary judgment on Plaintiff's independent claims of discrimination based on denial of training, performance counseling, administrative access to the network, and the moving of the file.

Defendant questions whether its actions were materially adverse within the context of a retaliation claim. (Doc. 39 at 23.)  Defendant asserts that Plaintiff's February 2003 testimony in the Hill case was not legally protected activity. (Doc. 47 at 18.)  Further, Defendant contends that Ms. Homan, who joined the office in January 2004, was unaware that Plaintiff had testified on behalf of Ms. Hill when Ms. Homan revised the PD.  (Doc. 47 at 11.)  Defendant also contends that the February 2003 deposition testimony was too remote in time from the July 2004 PD revision to provide a causal nexus for a prima facie case of retaliation.  (Doc. 47 at 18.)

The Tenth Circuit has noted that "[p]rotected opposition can range from filing formal charges to voicing informal complaints to superiors." *Hertz v. Luzenac Am., Inc.*, 370 F.3d 1014, 1015 (10th Cir. 2004).  Plaintiff gave deposition testimony in the Hill case and filed two EEO complaints of his own.  Plaintiff's conduct unquestionably constitutes protected activity.

As to the second prong of a prima facie retaliation claim, a plaintiff "must show that a reasonable employee would have found the action materially adverse such that they might be dissuaded from making a charge of discrimination." *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1213 (10th Cir. 2008).  In order to be actionable, the retaliation "must produce an injury or harm," and courts must attempt to separate "trivial harms from actionable injuries because Title VII does not establish a general civility code for the American workplace." *Somoza*, 513 F.3d at 1213.  Courts are to apply a "reasonable employee standard" because it "avoids the uncertainties and unfair

15

discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings." *Id.* (quotation omitted).

Plaintiff has submitted evidence that an accurate PD, desk audit and team leader position would have lead to his promotion.  Plaintiff also submitted evidence that the denial of training, meaningful performance evaluations and counseling, and administrative access to the network negatively affected his career development.  A jury could conclude that a reasonable employee would find such denials to be a materially adverse action that might dissuade a victim from reporting discrimination.  *See Williams v. W.D. Sports, N.M., Inc.*, 497 F.3d 1079, 1090 (10th Cir.2007) (explaining that analysis should not focus on existence of economic injury, but should instead focus on whether the action "might have dissuaded a reasonable employee from making or supporting a charge of discrimination") (quotation omitted); *see also Kessler v. Westchester County Dep't of Social Servs.*, 461 F.3d 199, 209 (2d Cir. 2006) (holding that plaintiff presented a genuine issue of fact as to whether he suffered adverse action for purposes of a retaliation claim where plaintiff's transfer stripped plaintiff of certain managerial responsibilities and he was forced to do more tedious work).

Conversely, no rational trier of fact could find the moving of a computer file to a shared drive would dissuade a victim from reporting retaliation.  Accordingly, Plaintiff has presented sufficient evidence on the question of whether the denial of an accurate PD, desk audit, team leader position, training, performance counseling and access to the network constituted materially adverse action in the context of his retaliation claim.  Summary judgment should be granted as to the independent retaliation claim based on the moving of the file.

Defendant argues that Plaintiff has failed to establish a causal connection between the protected activity and the retaliation.  Plaintiff stated in his affidavit that Ms. Fontaine blocked him

from filing an EEO complaint in October 2003. The Tenth Circuit has cautioned that the temporal proximity requirement "must not be read too restrictively where the pattern of retaliatory conduct begins soon after the [protected action] and only culminates later" in an adverse employment action. *Marx v. Schnuck Markets, Inc.*, 76 F.3d 324, 329 (10th Cir.1996); *see also Piercy v. Maketa*, 480 F.3d at 1199 (applying this principle from *Marx*). While the temporal period alone may be insufficient to establish causation, Plaintiff has provided sufficient additional evidence of circumstances that justify an inference of retaliatory motive to establish causation.

At the summary judgment stage, all inferences must be drawn in favor of Plaintiff. Under this standard, Plaintiff has presented evidence sufficient to establish a causal connection between the protected activity and the materially adverse actions. Plaintiff has presented evidence sufficient to support a prima facie case of retaliation.

Once a plaintiff meets his burden of demonstrating a prima facie case of discrimination or retaliation, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment actions. *McDonnell Douglas*, 411 U.S. at 802-804; *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003). The employer's burden, however, is merely one of production. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). The employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id.* Plaintiff does not dispute that Defendant has submitted evidence that it had nondiscriminatory reasons for its actions. Defendant has satisfied its production burden of advancing facially nondiscriminatory reasons for its actions.

After the defendant satisfies its burden of production to articulate a legitimate, nondiscriminatory reason for the adverse actions, the burden shifts back to the plaintiff to show that

17

the employer's proffered reasons are pretextual. *McDonnell Douglas*, 411 U.S. at 804.

"A plaintiff can show pretext by revealing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action such that a reasonable fact finder could rationally find them unworthy of credence." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002). A showing that the employer's justifications for its behavior are pretextual permits a finding of intentional discrimination, but does not compel it. *Reeves*, 530 U.S. at 146-47.

Plaintiff submitted evidence that similarly situated employees outside the protected class received more favorable treatment than Plaintiff. Ms. Homan delayed the revision of Plaintiff's PD until after the promotional freeze and thwarted his attempt to obtain a desk audit. Mr. Olsen was permitted to travel to California and Ft. Huachuca for training, yet Plaintiff's requests for out-of-state training were refused. Indeed, Defendant balked at Plaintiff's request for free online training. Ms. Homan declined to place Plaintiff in a team leader position in 2005, and instead appointed non-Hispanics to three such positions during the same period. Plaintiff's supervisors took inconsistent stances on the accuracy of his PD. Such inconsistencies support a finding of pretext. *See Kendrick*, 220 F.3d at 1230. Plaintiff has produced sufficient evidence to show pretext with respect to his claims.

## V.   Conclusion.

From the evidence considered in the aggregate and construed in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendant's proffered explanations for the adverse employment actions were pretextual. Plaintiff has submitted sufficient evidence to preclude summary judgment on his discrimination claims concerning the denial of an accurate PD, desk audit, and team leader position, and on his retaliation claims concerning the denial of an accurate PD, desk

audit, team leader position, training performance evaluation and counseling, and access to the network.

**WHEREFORE,**

      **IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 39), filed on January 11, 2008, is **GRANTED IN PART AND DENIED IN PART AS DISCUSSED HEREIN.**

_____

**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**